UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>WILSON PEGUERO,<br>    a/k/a, "King Dubb,"<br><br>    Defendant | Criminal No. 19-CR-10459-RWZ |

**MEMORANDUM IN SUPPORT OF SENTENCING RECOMMENDATION**

The government submits the instant memorandum in support of its recommendation for 41 months of incarceration for the defendant, Wilson Peguero a/k/a "King Dubb." This recommendation reflects the seriousness of the offense as well as the defendant's leadership position with the Latin Kings criminal enterprise, and is sufficient but no greater than necessary to accomplish the goals of sentencing.

**<u>THE ADVISORY SENTENCING GUIDELINES</u>**

In the plea agreement, Dkt. 1098, the parties agreed that the defendant's total offense level is 20, based on a base offense level of 19 for his participation in the racketeering conspiracy (U.S.S.G. § 2E1.1(a)(1)), plus four levels for his aggravating role as a leader or organizer (U.S.S.G. § 3B1.1(a)), minus three levels for his acceptance of responsibility (U.S.S.G. § 3E1.1). In the plea agreement, the government further agreed to recommend a sentence within the guideline range as calculated by the Court at the time of sentencing.

During the July 7, 2020, Rule 11 hearing, the government expressed its belief that the defendant had no scoreable criminal history, and that the corresponding guideline range would therefore be 33-41 months. The government also reiterated its agreement to recommend a sentence within this range. The Court explained to the defendant that Probation would make its own

1

calculation of the guidelines, "which not always agrees with what the Government says or your lawyer, for that matter." Dkt. 1146 at 10:10-11.  And so it has: Probation's calculation of the guidelines in the final Presentence Report ("PSR") places the defendant in criminal history category II with a total offense level of 21, for a corresponding guideline range of 41-51 months.  Probation's calculation utilizes a base offense level of 20 because the defendant's participation in the racketeering activity of fentanyl distribution involved at least 24 grams but no more than 32 grams of fentanyl.  PSR ¶ 82.  At the time the parties entered into the plea agreement on June 24, 2020 (and agreed to a base offense level 19), the government had not yet received the DEA chemical analysis report for suspected fentanyl seized from the defendant's residence.  Probation, however, had the benefit of this certification, dated July 22, 2020, which confirmed that the seized substance contained approximately 29.86 grams of fentanyl.  *Id*. ¶ 74.  Probation otherwise agrees with the parties that the defendant's aggravating role adds 4-levels, while his acceptance of responsibility entitles him to a 3-level reduction in his offense level.  In reviewing the defendant's criminal history, Probation determined that he has two scoreable offenses:  one point for a 2008 assault and battery with a dangerous weapon, and one point for a 2007 juvenile adjudication for knowingly receiving stolen property.  *Id*. ¶¶ 93-97.

## ARGUMENT

The government is bound by the plea agreement and its representations at the time of the Rule 11 hearing, but also by its duty of candor to the Court.  As such, the government acknowledges that Probation has correctly calculated the offense level, criminal history,[1] and

---

[1] Defendant objects to Probation's calculation of his criminal history because he believes the juvenile convictions from 2007 and 2008 are too old to count.  The alleged conspiracy, however, dates back to at least 2005 and the defendant's own YouTube videos reveal that he called himself "King Dubb" and rapped about his Latin Kings affiliation as early as March 2010.  *See* Ex A ("Putt'em in Dha Dirt" video dated March 3, 2010).  As such, the government believes Probation has properly counted both convictions under U.S.S.G. § 4A1.2(d)(2)(B), because the sentences were each imposed within five years of the commencement of the instant offense.

corresponding guideline range of 41-51 months.  The government submits that its recommendation of 41 months is faithful to both its promises[2] and the correctly-calculated guideline, and, as set forth below, is sufficient but no greater than necessary to accomplish the goals of sentencing.

The defendant's membership in the Latin Kings is manifest.  He has tattoos of "King Life" and "D5K," representing the Devon Street Kings Chapter (known as D5K); multiple cooperating witnesses, music videos, and coconspirators captured on recordings identified the defendant as "King Dubb;" and agents located a copy of the Manifesto of the Latin Kings (the governing document of the criminal enterprise, which sets forth the laws, rules, and regulations governing the behavior of its members) in defendant's bedroom when they executed a search warrant.  But defendant was more than a mere member, as he also served as the leader or "Inca" of the D5K Chapter in Boston for at least a year by the time of the December 2019 Indictment.  As Inca, the defendant organized more than ten individual members (including his twin, co-defendant Alexis Peguero a/k/a "King Lexi," who served as the second-in-command Cacique), oversaw their activities and their promotion within the criminal organization, recruited new members, implemented discipline within the ranks as necessary, and reported the activities of his chapter to state leadership.  The defendant specifically admitted his membership and this leadership role within the Latin Kings at his Rule 11 hearing.  Dkt. 1148 at 28-30.

As Inca of the D5K chapter, the defendant was aware of other members committing racketeering acts in furtherance of the Latin Kings' enterprise and also personally participated in racketeering acts, including distribution of controlled substances.  For example, the defendant was captured on recordings discussing drug pricing and distribution methods with other members of

---

[2] The parties' agreed-upon offense level 20 from the plea agreement, with a criminal history category of I (as initially calculated by the government during the Rule 11 hearing), results in a guideline range of 33-41 months.  The recommended sentence is within this range.

3

the Latin Kings, demanding that members who sold drugs pay more into the central "fundo," and was found to be in possession of approximately 29.86 grams of fentanyl, as well as digital scales used to weigh out drugs.

There are also multiple examples of the defendant's participation in violent retaliation against those who undermined the D5K chapter. In December 18, 2018, the defendant told CW-3 that Victim 5 was "a rat." In subsequent calls, the defendant confirmed for other Latin Kings members that he had seen the "paperwork" confirming that Victim 5 was cooperating with law enforcement: "I got the whole page, it's like from, it's like a court document… It's an incident report…it says [Victim 5's] name and everything he said, he got robbed." Before any members could take action against Victim 5, investigators moved Victim 5 to a protected location within the DOC.

In February and March 2018, the defendant issued a "greenlight" on Victim 19 for not falling in line with the D5K chapter and starting a "renegade chapter." In case there was any confusion about what he meant, the defendant reiterated the greenlight twice more, and specified that if any member saw Victim 19, they should "take him in [the] cut (alley) and give him a violation…break his ribs. If he doesn't take a violation, then clap (shoot) him." This was the punishment, the defendant determined, for a member refusing to respect the organizational hierarchy and the authority of his D5K chapter.

The defendant not only demonstrated his power within the ranks of the Latin Kings but also helped the Latin Kings project power to the outside world—including to civilians, prospective members, and members of rival gangs—by creating and publishing rap videos which functioned as propaganda for the enterprise. *See* Ex A. In his lyrics, the defendant (under the name "D'Generalz") bragged about shooting members of a rival gang and committing other acts of

violence, threatened anyone who might "rat" on him, and flaunted the Latin Kings' power, influence, and wealth amassed due to their drug dealing. In light of the substantial evidence of defendant's involvement in actual and/or attempted violence and drug dealing, these boasts cannot be dismissed as mere braggadocio.[3] What's more, the defendant acknowledged that listening to other artists' rap music about gang life when he was a teen had a direct and substantial impact on his decision to join the Latin Kings in the first place. PSR ¶ 139. After personally experiencing the impact such media could have on its consumers, the defendant cannot reasonably claim now that his videos were innocent expressions of creativity from an aspiring rap star.

The nature and circumstances of this defendant's leadership and participation in the racketeering enterprise, as well as his personal history and characteristics, justify a sentence of 41 months. A sentence of this length adequately reflects the seriousness of the offense and also his aggravating role in the organization. This sentence also serves the purposes of promoting respect for the law and providing just—but not excessive—punishment for the harm the defendant caused to the community through his enterprise activities. On consideration of all these factors, 41 months is a fair and just sentence.

## **CONCLUSION**

The Court should impose a sentence of 41 months of incarceration.

---

[3] One of the video states that the firearms depicted are props. While there is no way to confirm this self-serving claim, they certainly look realistic, and investigators did seize real ammunition from the defendant's residence. Moreover, regardless of whether the depicted firearms are real, the violent messaging in the videos is clear. *See* Ex. A.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:    */s/ Lauren A. Graber*
PHILIP A. MALLARD
LAUREN A. GRABER
Assistant U.S. Attorney
United States Attorney's Office
1 Courthouse Way, Suite 9200
Boston MA 02210
617-748-3309

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Lauren A. Graber*
LAUREN A. GRABER
Date:   November 25, 2020          Assistant U.S. Attorney