UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>WILSON PEGUERO, )<br>    Defendant, ) | Cr. No. 16 CR 10459 RWZ |

**DEFENDANT WILSON PEGUERO'S SENTENCING MEMORANDUM**

Through counsel, Defendant Wilson Peguero, files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C., sec. 3553(a).

In his plea before Your Honor, Mr. Peguero plead guilty to and accepted his responsibility for having engaged in the criminal conduct for which he is being sentenced, his role in so much of Count One of the Indictment as charged Conspiracy to Conduct Enterprise Affairs through a Pattern of Racketeering Activity, in violation of Title 18, United States Codes, sec. 1962(d).

Mr. Peguero promptly accepted responsibility for his conduct and by all accounts has been a model detainee while he has been detained.

In the Plea Agreement, the Government and Mr. Peguero agreed that the Mr. Peguero's total offense level under the Guidelines is 20. This included Mr. Peguero's acceptance for his role in the activity. With a Criminal History Category I, the guideline for a total offense level 20 is 33 to 41 months.

The Defendant seeks to be sentenced to a committed sentence of 18 months, with a period of supervised release of thirty-six (36) months. Mr. Peguero has been held since his arrest

on or about December 5, 2019. This would be approximately 363 days, or 11 months and 27 days, as of the date of his December 1, 2020 sentencing. Such a sentence would be is "sufficient, but not greater than necessary," to comply with the statutory directives set forth in 18 U.S.C., sec. 3553(a).

## Nature and Circumstances of the Offense

Mr. Peguero has accepted responsibility for his role in the offenses. This was an unfortunate period of time in Mr. Peguero's life in which he admittedly made a serious and tragic mistake. His prompt acceptance of responsibility and his conduct thereafter is reflective of his remorse, and that this conduct is not truly reflective of Mr. Peguero's nature.

## Mr. Peguero' Background

Mr. Peguero has submitted a number of letters from his family that describe his background and his family history. Mr. Peguero also notes that the Pre-Sentencing Report fairly accurately reflects his personal and family data but wants to highlight several points for the Court.

Family History

Mr. Peguero is 29 years old. He has a strong support network of family and friends. He did not know his father and was raised with two other siblings by his mother, Garmen Lopez ("Ms. Lopez") as a single mother. This had a tremendous effect on Mr. Peguero – much negative, and some positive.

As Ms. Lopez describes, his upbringing was one with limited financial resources and educational support and or opportunity. Ultimately, Mr. Peguero did received a GED through the Youthbuild Boston Program, in Roxbury, MA.

As Ms. Lopez notes, and as Mr. Peguero admits, his upbringing led him to associate with

those "on the streets". Ultimately, and tragically, this lead to gang association at the young age of 14 or 15. The association was driven by Mr. Peguero's lack of guidance, lack of structure, and naivete.

Sophia Pineda ("Ms. Pineda") is Mr. Peguero's sister. She too has provided the Court a very candid and compelling insight in Mr. Peguero's background and character. Ms. Pineda describes the hardship the family endured growing up and how and why she grew to be so close to Mr. Peguero. Ms. Pineda sheds great insight into the true nature of the home environment when she explained to the court why she had to move out of the home. More importantly, Mr. Pineda explains to the Court her observations of how Mr. Peguero changed with the birth of his daughter and how he wants to be the father to her that he never had.

Zulayka Colon ("Ms. Colon"), Mr. Peguero's cousin, also provides insight into Mr. Peguero's character and upbringing. She describes the unfortunate circumstances and environment Mr. Peguero found himself surrounded by growing up – the circumstances that led him to the "street life".

Ramon Guerrero ("Mr. Guerrero"), a long-time friend of Mr. Peguero's, describes their upbringing and the positive effect Mr. Peguero had on his life.

Mr. Peguero had a daughter in 2013, at approximately 22 years of age. By all accounts, he has been a very present, activity and good father. Ms. Lopez notes that she saw him change his lifestyle – he stopped smoking, pursued music as a hobby, and stayed home more with his family.

There is also a letter from Mr. Peguero's 12-year old niece. She attests to her close relationship with Mr. Peguero and his role in her life.

The letters of support for Mr. Peguero are attached as Exhibit A.

Also submitted with this memorandum are a number of family photos. The photos depict Mr. Peguero with family members at a graduation, child's birthday party, and with his siblings. The photos are attached as Exhibits B-I.

Education and Employment

Mr. Peguero obtained his GED through the Youthbuild Boston Program, in Roxbury, MA. This has been important for him as he at least has that education that he can impress upon his daughter, and young relatives, as an example of the importance of education.

Mr. Peguero work history primarily consists of a variety of jobs, working hotel security, landscaping, and retail jobs.

As noted in the Defendants objections to the paragraph 143 of the PSR, the impact of COVID 19 affected his ability to obtain programs and certifications at Wyatt. His memory is that programming ceased being available around April, 2020 and did not resume again until around July, 2020. However, program availability slowed down again shortly after that and did not pick up again until around October, 2020. The Defendant has just completed education on Anger Management For Substance Abuse Clients, and Turning Points in Modern History. A copy of the certifications is attached as Exhibit J.

Support Network

As noted by the letters submitted on his behalf, Mr. Peguero has a strong support network for when his incarceration is over. Mr. Peguero is confident this support network will assist him in achieving both his short-term and long-term goals for himself and his family.

Criminal History

Mr. Peguero does not have a significant prior criminal history and his history suggests he is a good candidate for probation and will comply with terms of his release and probation.

## Guidelines Analysis

The Probation Office contends the total offense level is 21. Mr. Peguero contends the total offense level is 20, and notes that Defendant and the Government agreed the total offense level is 19.

Further, in arriving at the total offense level of 19, Mr. Peguero contents his criminal history score should be 1, resulting in a criminal history category of I. As to Paragraph 93 of the PSR, Mr. Peguero states the conduct should not result in any points. Mr. Peguero contends that a juvenile sentence imposed for an offense committed prior to the defendant's 18th birthday is counted only if confinement resulting from such sentence extended into a 5-year period preceding the defendant's commencement of the instant offense. See, sec. 4A1.2(d). There has been no such showing in this matter.

Further, as to Paragraph 94 of the PSR, Mr. Peguero states the conduct should not result in any points. The conduct did not result in a conviction and was ultimately dismissed. See, sec. 4A1.2(f). Further, a juvenile sentence imposed for an offense committed prior to the defendant's 18th birthday is counted only if confinement resulting from such sentence extended into a 5-year period preceding the defendant's commencement of the instant offense. See, sec. 4A1.2(d). No such showing has been made here.

Finally, Mr. Peguero states the total criminal history category score should be category I, and further states that a downward department would be warranted if the Court did find the total criminal history category to be category II. A downward departure to Category I would be appropriate under sec. 4A1.3(b)(1).

## Appropriateness of the Sentence

"Section 3553(a) is more than a laundry list of discrete sentencing factors; it is, rather, a tapestry of factors, through which runs the thread of an overarching principle:" to "impose a

sentence sufficient, but not greater than necessary" to achieve the sentence goals enumerated in the statute. United States v. Yonathan Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008). In determining an appropriate sentence, a court should "construct a sentence that is minimally sufficient to achieve the broad goals of sentencing." (Id.) An 18-month sentence appropriately accounts for the sentencing factors set forth in 18 U.S.C. § 3553(a), and would be "sufficient, but not greater than necessary, to comply with the purposes" of Section 3553(a)(2).

An 18-month sentence would more than satisfy the requirement that the sentence reflect the seriousness of the offense, promote respect for the law, provide punishment, afford adequate deterrence, and protect the public from further crimes. The almost 12 months Mr. Peguero has been detained have certainly satisfied the goals of punishment and deterrence in his case. He promptly accepted responsibility and has been a model pretrial detainee. He has used this time to reflect on his conduct and how it has affected not only him – but more importantly in his eyes – the effect it has had on his family. His conduct has demonstrated he is not in need of further incarceration to address any of the goals of sentencing. The incarceration certainly gave Mr. Peguero time to reflect upon his life and emphasize that he wants to live a law-abiding and productive life so that he can be there for his daughter and family, and to provide for his daughter.

Mr. Peguero has accepted responsibility for his offenses. His background and upbringing exposed him to an environment where he was without a positive male role model, and his mother struggled with depression and alcoholism. He grew up in the classic environment which exposed him to a culture which was, unfortunately, a way to associate with some semblance of a family and a sense of belonging. He has accepted responsibility for those decisions – affected by culture, environment, and socio-economic factors are not. However, those close to him have

presented the personal side of Mr. Peguero that reflects the value he presents to his family, and, Mr. Peguero contends, the value he can contribute to his family and society once his incarceration is over.

Mr. Peguero also asks that the Court not exercise its discretion to deem him ineligible for federal benefits, pursuant to 21 U.S.C. sec. 862. Although he does not currently receive any such benefits, he believes it would be inconsistent to establishing himself as an independent law-abiding person to deny him those benefits should he need them in the future. Such benefits could be particularly relevant as it relates to attending trade school and seeking tuition assistance.

## Conclusion

Mr. Peguero prays this Honorable Court sentence him to an 18-month committed sentence, with credit for time served, and a period of supervised release of thirty-six (36) months. He is dedicated to his family and bettering employment so he can provide for his family. He is deeply remorseful and regretful over his criminal involvement to which he has pled guilty and is tremendously sorry that his incarceration had a negative impact on his family. He had been very active and involved with his daughter and other family members, and he knows that they have all suffered deeply from his incarceration and he looks forward to being there for them as a positive role model going forward. He is looking forward to his release from incarceration when he can set out to be a reliable, supportive and productive father for his daughter.

Mr. Peguero appreciates the Court's consideration of his requests.

Respectfully submitted,

Wilson Peguero, Defendant,

By his attorney,

*/s/ James M. Caramanica*

James M. Caramanica, BBO 565882
Law Office of James M. Caramanica
120 North Main St., Suite 306
Attleboro, MA 02703
(508) 222-0096

Dated: 11/29/20

## CERTIFICATE OF SERVICE

I certify that Exhibits B-I of this document are filed under seal, with the remainder of the document filed in the ordinary course, and copies will be emailed to the relevant parties.

*/s/ James M. Caramanica*
James M. Caramanica

Dated: 11/29/20